UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 0:25-cv-04767-LMP-JFD

STATE OF MINNESOTA, *by and through its Attorney General, Keith Ellison*,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE and BROOKE ROLLINS, *Secretary of the U.S. Department of Agriculture*,

Defendants.

**DECLARATION OF SHIELA CORLEY**

Shiela Corley, for her declaration pursuant to 28 U.S.C. § 1746, states as follows:

1. I am the Chief of Staff to the Deputy Under Secretary for the Food, Nutrition, and Consumer Services ("FNCS") mission area, which is a component of the United States Department of Agriculture ("USDA"). I have served in this position since February 2025 and have worked for FNCS since 2018. I have worked for USDA in various capacities since 1995.

2. In my capacity as Chief of Staff, I provide guidance and support to USDA senior leadership on matters pertaining to the administration of sixteen domestic nutrition and food security programs and the promotion of the dietary guidelines.

3. In my capacity as Chief of Staff, I supervise the Senior Policy Advisor for Integrity who provides guidance and support to USDA senior leadership on matters pertaining to the integrity of the sixteen domestic nutrition and food security programs administered by FNCS.

4. I make the statements herein based on personal knowledge, as well as on information I acquired while performing my official duties and discussions with colleagues at the USDA who are familiar with the facts at issue in this litigation.

**DECLARATION OF SHIELA CORLEY - 1**

**Continued SNAP Participation and Recertification**

5. Eligible individuals and households enrolled in the Supplemental Nutrition Assistance Program ("SNAP") receive monthly benefits on an electronic benefit transfer ("EBT") card, which can be used like a debit card at authorized retail food stores to purchase food.

6. SNAP is run as a partnership between the federal government and the States. At the federal level, USDA's Food and Nutrition Service ("FNS") is responsible for administering SNAP for retail food stores and issuing administrative rules. 7 U.S.C. § 2013(a), (c); 7 C.F.R. § 271.3. FNS also oversees the States' administration of SNAP, including reviewing the States' Plans of Operations and their payment accuracy. 7 U.S.C. § 2020(d).

7. Once a household is certified to participate in SNAP, it must comply with reporting requirements to maintain its eligibility throughout the certification period. The reporting requirements can vary by household and State option but include monthly reporting, quarterly reporting, simplified reporting (periodic reporting), and change reporting. *See* 7 CFR § 273.12(a)(1). Minnesota utilizes change reporting and periodic reporting.[1]

8. Change reporting requires households to report certain changes in expenses, household composition, income, and winnings. Households subject to change reporting must report any such change within 10 days from learning of it or, at the State's discretion, within 10 days of the end of the month in which the change occurred. *See* 7 CFR § 273.12(a)(1).

9. In Minnesota, the following households are subject to change reporting:

- All household members are homeless;

---

[1] *See* https://dcyf.mn.gov/snap-reporting.

**DECLARATION OF SHIELA CORLEY - 2**

- All household members are migrant workers;
- All household members live on Indian reservations;
- Any household member is a seasonal farmworker; and
- In households with no earned income, all adult members are either age 60 or older or have a certified disability.

10. Minnesota has opted for households subject to change reporting to report changes within 10 days of learning of the change.

11. All other households are subject to periodic reporting, which Minnesota has set at every six months. This is the longest period of time households subject to periodic reporting can go between reports, as regulations at 7 CFR § 273.12(a)(5)(iii)(B) provide these households "must file a periodic report between 4 months and 6 months, as required by the State agency."

12. In addition to reporting requirements, households must also timely apply for recertification prior to the end of their certification period to ensure there is no disruption in benefits. *See* 7 CFR § 273.14(c). For recertification, the State Agency "must establish procedures for notifying households of expiration dates, providing application forms, scheduling interviews, and recertifying eligible households prior to the expiration of certification periods," and "[h]ouseholds must apply for recertification and comply with interview and verification requirements." 7 CFR § 273.14(a).

13. The application for recertification "may be the same as the initial application, a simplified version, a monthly reporting form, or other method such as annotating changes on the initial application form." 7 CFR § 273.14(b)(2). Minnesota's recertification application is the same as the initial application.

**DECLARATION OF SHIELA CORLEY - 3**

14. Regulations at 7 CFR § 273.14(b)(3) and 7 CFR § 273.2(e) provide the recertification interview requirements. Generally, a household must have a face-to-face interview at least once every 12 months. Pursuant to 7 CFR § 273.2(e)(2), State agencies may use a telephone interview instead of a face-to-face interview for all or some applicant households but must grant a face-to-face interview to any household that requests one.

15. Some households, such as those certified on an expedited basis, may have to recertify as early as one month, depending on circumstances.

**Concerns with Minnesota's Administration of SNAP**

16. FNS's review of the data it has gathered in the SNAP Information Database from complying States has shown that States with a county-administered program, like Minnesota, are more likely to have higher rates of fraud, waste, and abuse than States that do not delegate administration of SNAP to the county level.

17. In September 2022, the Department of Justice (DOJ) announced criminal charges against 47 defendants for their alleged roles in a $250 million fraud scheme in Minnesota that exploited a Federally-funded child nutrition program administered by USDA FNS.[2]

18. In September 2025, DOJ announced that it had charged the 75th defendant in this scheme.[3] Throughout this entire scheme, Federal funds provided to Minnesota by USDA FNS

---

[2] Department of Justice, *U.S. Attorney Announces Federal Charges Against 47 Defendants in $250 Million Feeding Our Future Fraud Scheme* (Sept. 20, 2022), https://www.justice.gov/archives/opa/pr/us-attorney-announces-federal-charges-against-47-defendants-250-million-feeding-our-future; Federal Bureau of Investigations, *Dozens Charged in $250 Million COVID Fraud Scheme* (Sept. 21, 2022), https://www.fbi.gov/news/stories/dozens-charged-in-250-million-covid-fraud-scheme-092122.

[3] Department of Justice, *75th Defendant Charged in Feeding Our Future Fraud Scheme* (Sept. 4, 2025), https://www.justice.gov/usao-mn/pr/75th-defendant-charged-feeding-our-future-fraud-scheme.

**DECLARATION OF SHIELA CORLEY - 4**

that were intended as reimbursements for the cost of serving meals to children were instead misappropriated and laundered

19. In late 2023, staff at USDA learned of a SNAP training by Minnesota Department of Human Services ("MDHS"), the precursor to the Minnesota Department of Children, Youth, and Families ("MDCYF")—the agency within Minnesota that administered SNAP. Attached hereto as **Exhibit A** is a true and correct copy of the training video entitled, "Fraud Prevention and Investigations: The Impact On Children Living In Poverty," which is also available at https://minnesota.webex.com/recordingservice/sites/minnesota/recording/a512a32a4032103cbffe00505681f744/playback (last visited Jan. 8, 2026).

20. After reviewing Minnesota's training video "Fraud Prevention and Investigations: The Impact On Children Living In Poverty," USDA staffed were so severely alarmed by the statements made by Minnesota's SNAP Program Manager, that USDA flagged Minnesota as "at risk" internally and placed them on the next Management Evaluation cycle.

21. Throughout the training video, on multiple occasions, Minnesota's SNAP Program Manager described clear instances of intentional Program violations as defined at 7 CFR § 273.16(c)(1) and encouraged training participants to find ways around doing so.

22. In Federal Fiscal Year 2024, Minnesota's payment error rate ("PER") was 8.98%. Section 7(c)(1)(G) of The Food and Nutrition Act of 2008 requires a corrective action plan for PER rates over 6%. 7 U.S.C. § 2025(c)(1)(G). Minnesota developed the required plan for FFY 2024, which FNCS subsequently approved. Attached hereto as **Exhibit B** is a true and correct copy of MDCYF's Minnesota Corrective Action Plan: SNAP Payment Error Rate (PER).

**DECLARATION OF SHIELA CORLEY - 5**

23. Regulations at 7 CFR § 273.7(b) provides a list of exemptions to the general work requirements. The exemption list does not include "homelessness" as an exemption from the general work requirements.

24. USDA Management Evaluations are conducted only on discrete portions of a State's SNAP operations at a given time, and the various "functional areas" examined by the Management Evaluations are on timed review cycles.

**Pilot Project**

25. To test program changes that might increase the efficiency of SNAP and improve the delivery of SNAP benefits to eligible households, the Secretary "may conduct on a trial basis, in one or more areas of the United States, pilot or experimental projects. . . ." 7 U.S.C. § 2026(b)(1)(A). Any project conducted by the Secretary must be consistent with SNAP's goal of providing food assistance among low-income individuals and must include an evaluation to determine the effects of the projects 7 U.S.C. § 2026(b)(1)(B)(i). Further, the Secretary may conduct a project that is designed, in relevant part, to improve SNAP administration. 7 U.S.C. § 2026(b)(1)(B)(ii). The Secretary is permitted to waive any requirement of the FNA "to the extent necessary for the project to be conducted."

26. The pilot project, as described in the December 16, 2025 letter (the "December 16 Letter") by Brooke Rollins, Secretary of the United States Department of Agriculture, will be able to detect SNAP recipient fraud as well as MDCYF employee fraud. Attached here to as **Exhibit C** is a true and correct copy of the December 16 Letter.

27. Over the years, USDA has established numerous pilot projects, which Minnesota has participated in without any demands for notice and comment procedures. For example, Minnesota has participated in the Minnesota Family Invest Program, a pilot project, since 1994,

**DECLARATION OF SHIELA CORLEY - 6**

which became statewide in 1996. Minnesota also participated in the following USDA pilot programs: Cash-Out; Community Partner Interview; Group Home; Mini-Simplified Food Stamp Program; Census; and Online Purchasing.

28. While the pilot project could detect SNAP recipient fraud, it could also detect and illuminate instances of MDCYF employee fraud. This would allow USDA full review of the recertification actions, permitting federal employees to detect whether case workers were fraudulently opening cases to pay themselves benefits, for example.

29. The State estimates there are approximately 100,000 SNAP households impacted by the December 16th Letter notifying Minnesota of the pilot but then goes on to admit there are "minor discrepancies" between MDCYF's estimate of the number of affected households (around 106,000) and the sum of the counties' estimates (around 96,000). This "minor discrepancy" would be a difference of approximately 10.4%, which equates to a $37,680,000 difference in benefits provided over a 12-month period using Minnesota's average monthly benefit amount of $314.  Minnesota's estimations cannot be relied upon.

**Non-Compliance Procedures**

30. The December 16th Letter notifying Minnesota of the pilot also informed it that it would be subject to noncompliance procedures codified at 7 U.S.C. § 2020(g) if it failed to participate in the pilot. That section provides, in part, that if the Secretary determines "that in the administration of [SNAP] there is a failure by a State agency without good cause to comply with any of the provisions of this Act, the regulations issued pursuant to this Act, [or] the State plan of operation," the Secretary "shall immediately inform such State Agency of such failure and allow a specified period of time for the correction of such failure." 7 U.S.C. § 2020(g). If the failure is

**DECLARATION OF SHIELA CORLEY - 7**

not corrected within that time, the Secretary "shall proceed" to withhold administrative funds and may refer the matter to the Attorney General to seek injunctive relief to require compliance. *Id.*

31. Regulations at 7 C.F.R. § 276.4 (suspension/disallowance of administrative funds) and 7 C.F.R. § 276.5 (injunctive relief) implement 7 U.S.C. § 2020(g). Both regulatory provisions apply to scenarios where FNS determines that a State agency has failed to comply with the Food and Nutrition Act of 2008, the regulations issued pursuant to the Act, or the FNS-approved State Plan of Operations. *See* 7 C.F.R. § 276.4(a)(2); 7 C.F.R. § 276.5(a).

32. Even before the Secretary sent her December 16 Letter, she had expressed concern about SNAP fraud, and in particular, Minnesota's failure to share SNAP data with the Federal government, and the disturbing indicators of undetected errors or fraud from States that had cooperated and provided data. Attached as **Exhibit D** is a true and correct copy of postings by Secretary Rollins from Twitter.com. at 6:55 PM Nov. 13, 2025 and 10:09 AM Dec. 11, 2025.

33. On January 7, 2026, in response to a letter the Secretary had sent the State of Colorado, the County Attorney for Douglas County, Colorado communicated that, "[i]n our efforts to become compliant with the SNAP recertification pilot project . . ." it was requesting, among other things, "a 90-days extension to complete the recertification process in conformance with the pilot program." Attached hereto as **Exhibit E** is a true and correct copy of an e-mail exchange between the County Attorney for Douglas County, Colorado and USDA's Governmental Affairs, dated January 7, 2026.

34. The State never responded to the Secretary's December 16 Letter, except to file suit against the USDA and the Secretary two days before Christmas and later move to enjoin the Secretary's pilot.

**DECLARATION OF SHIELA CORLEY - 8**

35. On January 6, 2026, at the Court's instruction, the State's attorneys for the first time met and conferred with USDA's attorneys. During this conference, the State confirmed that: (1) the State had not asked, and was not asking, for more time to comply with the January 15, 2026 SNAP recertifications requested by the Secretary's December 16 Letter; (2) the State had not done any work to comply with the Secretary's December 16 pilot, and (3) the State had not proposed, and was not proposing, any alternative structure to the pilot that would make it possible for the State to agree to perform the pilot.

36. The State's attorneys stated that it is the State's position that the Secretary's pilot is unauthorized, and that the State does not need to ask for more time to comply because the USDA has no right to impose the deadlines upon the State. The State's attorneys further stated that if the State had worked on the pilot, it would have caused the State "irreparable harm."

37. As of January 8, 2026, Minnesota has not responded to the Secretary's December 16 Letter, inquired about its options, or proposed any alternatives to the pilot schedule, including asking for additional time to comply with the pilot.

[*signature page follows*]

**DECLARATION OF SHIELA CORLEY - 9**

Under penalty of perjury, pursuant to 28 U.S.C. § 1746(2), I declare the foregoing to be true and correct to the best of my knowledge.

On this 8th day of January 2026, in Washington, D.C.

_____
SHIELA CORLEY
Chief of Staff
Food, Nutrition, and Consumer Services