UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

State of Minnesota,
by and through its Attorney General
Keith Ellison,

Plaintiffs,

v.

United States Department of Agriculture,
and Brooke Rollins, as Secretary of the
Department of Agriculture,

Defendants.

Case No. 25-CV-4767 LMP-JFD

**SECOND DECLARATION OF JOVON PERRY**

I, Jovon Perry, declare and state as follows:

1. I am a resident of the State of Minnesota, and I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am currently employed by the Minnesota Department of Children, Youth, and Families (DCYF) as Director of the Economic Assistance and Employment Supports Division. My educational background includes a Bachelor of Science Legal Studies Degree and Master of Public Affairs Degree. I have been employed as Director of the Economic Assistance and Employment Supports Division since April 2014. As Director, I oversee economic assistance programs including the Temporary Assistance for Needy Families (TANF) program referred to as the Minnesota Family Investment Program, Diversionary Work Program, Supplemental Nutrition Assistance Program (SNAP), SNAP Employment and Training, and Summer Electronic Benefits Transfer (EBT) referred by USDA as the

Minnesota Sun Bucks Program. My professional experience in this and similar capacities expands 20 years working for state government and the nonprofit sector.

3. I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

4. DCYF does not encourage or tolerate fraud in SNAP or other benefits programs. I am not aware of any person at DCYF ever expressing any views to the contrary.

5. I have reviewed the video attached as Exhibit A to the Declaration of Sheila Corley and available at https://minnesota.webex.com/recordingservice/sites/minnesota/recording/a512a32a4032103cbffe00505681f744/playback.

6. Nowhere in the video do the trainers advise people to ignore or tolerate fraud. Instead they discuss how beneficiaries can lose SNAP and other benefits if they provide inaccurate information even though they are eligible for the benefits. That is, the undisclosed information would not have disqualified them from the benefits. The trainers discuss building trust with beneficiaries and resolving informational discrepancies so that eligible households do not lose benefits for providing inaccurate information.

7. One of the trainers in the video led a training in October 2025 titled "Maintaining Program Integrity in Public Assistance Programs." That training discusses the importance of fraud prevention and investigation in public assistance programs, including SNAP, and encourages workers to refer suspicious cases to investigators. A true and correct copy of a presentation from this training is attached as Exhibit 1.

8. I am not aware of any previous communication from USDA or its FNS division regarding the video discussed in their opposition to Minnesota's motion. I have

consulted with others who would be in a position to know of any such communications, and they were also unaware of any.

9. I am not aware of USDA or FNS having flagged Minnesota as "at risk" or scheduling a Management Evaluation because of the video discussed in Defendants' opposition. I have consulted with others who would be in a position to know these things and they were also unaware of them.

10. USDA also cites a tweet that alleges SNAP issuances increased 40% in Minnesota under the Biden Administration (see Corley Decl. Ex. D). This information is incorrect. It comes from a USDA State Activity Report. Minnesota does not know how USDA aggregated its data for that report, but it appears that the USDA State Activity Report did not separate out Minnesota's Pandemic EBT (PEBT) spending and may have double-counted other spending. The data in the USDA State Activity Report comes from the FNS-46 forms that the state submits every month. In Federal fiscal years 2021, 2022 and 2023, those forms included spending for regular SNAP, Pandemic EBT (PEBT) and Emergency SNAP (ESNAP). The FNS-46 includes spending information by program and is aggregated in separate lines of the report form. Minnesota consistently reported spending in the same way all three years. DCYF reached out to USDA to clarify whether the aggregated spending should be included on a different line of the report for greater clarity and use in reports like the USDA State Activity Report.

11. Attached as Exhibit 2 is a true and correct copy of a letter dated November 13, 2024 from Gina Chief of FNS to Kathy Bruen, SNAP Director at DCYF. That letter states FNS completed its Management Evaluation of Minnesota's SNAP administration

with a focus on Recipient Integrity and that Minnesota had successfully resolved all findings.

12. Minnesota's Corrective Action Plan for its SNAP payment error rate has nothing to do with fraud. (*See* Corley Decl. Ex. B.) Corrective action plans for payment error rates are extremely common. Attached as Exhibit 3 is a true and correct copy of a memo from FNS dated July 1, 2024. That memo shows that 47 states were required to submit corrective action plans because their payment error rates exceeded six percent.

13. Ms. Corley's declaration claims Secretary Rollins had previously expressed concern about SNAP fraud, citing two tweets from Secretary Rollins. (*See* Corley Decl. ¶ 32 & Ex. D.) The first Tweet alleges data from 29 states that submitted SNAP data had uncovered significant SNAP fraud. Minnesota is not one of those 29 states. A federal district court has held that USDA's data demand is unlawful and that federal law prohibits Minnesota from providing the requested information. *See California v. USDA*, 2025 WL 2939227 (N.D. Cal. Oct. 15, 2025).

14. The second Tweet concerns SNAP retail fraud, not beneficiary fraud. It provides no evidence of SNAP retail fraud in Minnesota. The USDA, not Minnesota or DYCF, has sole responsibility for overseeing SNAP retailers. Attached as Exhibit 4 is a true and correct copy of USDA's "Training Guide for Retailers," available at https://fns-prod.azureedge.us/sites/default/files/media/file/Retailer-Training-Guide.pdf. That guide states "FNS issues permits to qualified retailers to accept SNAP benefits, monitors SNAP retailers to ensure that they follow Program rules, and withdraws or disqualifies SNAP retailers

who have broken the rules or no longer qualify to accept SNAP benefits." (Ex. 4 at 5; *see also* 7 C.F.R. §§ 278.1–278.9.)

15. Secretary Rollins has not waived any requirements of the Food and Nutrition Act for Minnesota in connection with the "pilot project" discussed in the Recertification Letter. When FNS waives a SNAP requirement, it does so formally and in writing. Attached as Exhibit 5 is a true and correct copy of a SNAP waiver from FNS.

16. Minnesota administers the federal Temporary Assistance to Needy Families program as the Minnesota Family Investment Program or "MFIP." Minnesota combines SNAP and MFIP benefits into a single benefit. The SNAP portion is referred to as the "food portion" of the benefit.

17. DCYF previously estimated there are approximately 106,000 SNAP households in Hennepin, Ramsey, Washington, and Wright Counties (the "Recertification Counties"). (Perry Decl. ¶ 24.) That estimate used data from October 2025 and included households who receive SNAP and an MFIP food benefit, which is typically funded with SNAP dollars, but in some cases is state funded.

18. DCYF's data shows that as of January 11, 2026 there are 97,804 households in the Recertification Counties eligible for SNAP and/or an MFIP food benefit funded by SNAP.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of January, 2026, in Brooklyn Park, Minnesota.

Jovon Perry
Director of Economic Assistance and Employment
Supports Division
Family Wellbeing Administration
MN Department of Children, Youth, and Families