UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

State of Minnesota,
by and through its Attorney General,
Keith Ellison,

Plaintiff,

v.

United States Department of Agriculture and Brooke Rollins, as Secretary of the Department of Agriculture,

Defendants.

Case No. 25-CV-04767-LMP-JFD

**MEMORANDUM OF LAW REGARDING MOOTNESS**

A case is moot only where the defendant carries the burden of proving it is impossible for the plaintiff to obtain relief. A defendant may not moot a case by voluntarily ceasing its challenged conduct. Before this Court entered its preliminary injunction, USDA[1] took multiple actions against Minnesota for failing to comply with its unlawful demands. USDA has since refrained from further action only because this Court enjoined it from doing so. USDA has vigorously defended its actions and never renounced its intentions. Even if it did, its voluntary actions could not moot this case. Minnesota needs final relief to protect it from the many harms USDA has threatened to inflict. Because it is not impossible for this Court to grant relief, this case is not moot.

[1] "USDA" refers to both Defendants.

## BACKGROUND

On December 16, 2025, Secretary of Agriculture Brooke Rollins sent a letter (the "Recertification Letter") purporting to require Minnesota to recertify the eligibility of all SNAP households in four counties within thirty days. Am. Compl. Ex. 1. She warned that "[f]ailure to participate in this pilot project as specified by USDA will trigger noncompliance procedures codified in 7 U.S.C. § 2020(g). It may also affect Minnesota's continued participation in SNAP." *Id.*

Because the Recertification Letter's demands were unlawful and impossible, Minnesota sued instead of attempting to comply. USDA then took multiple actions to penalize Minnesota. On January 9, 2026, Secretary Rollins sent a second letter (the "Awards Termination Letter"). Am. Compl. Ex. 2. Citing, among other things, that Minnesota had filed this lawsuit, the Awards Termination Letter stated it "suspend[ed] payments on all active awards and any future awards from USDA to the State of Minnesota and the City of Minneapolis, currently totaling over $129.18 million." *Id.*

On January 14, 2026, minutes before this Court's preliminary injunction hearing, USDA's counsel delivered a third letter from Secretary Rollins (the "Enforcement Letter"). Am. Compl. Ex. 3. That letter "immediately" withheld SNAP administrative funds for the first quarter of 2026. *Id.* Federal law (7 U.S.C. § 2020(g)) requires USDA to follow several steps before withholding such funds. However, the Enforcement Letter purported to "waive" those procedures. *Id.*

At the hearing, the Court issued a preliminary injunction enjoining USDA from taking any adverse action against Minnesota based on the Recertification Letter or

withholding funds under the Enforcement Letter. Two days later, the Court issued a written opinion explaining its decision. ECF 44 ("PI Order").

The injunction has prevented USDA from taking further action,[2] but USDA has never backed down. It has vigorously defended the legality and prudence of its actions. ECF 22, 23, 36, 63, 67, 81; July 28, 2026 Tr. at 28:23–24, 66:22–67:1, 68:9–12. It has argued this Court's injunction "shield[s] the State from its legal obligations and accountability for its acts and omissions." ECF 22 at 25. USDA defended its actions despite acknowledging they threatened the hundreds of thousands of Minnesotans who rely on SNAP to feed themselves. ECF 67 at 41–42 (claiming unproven fraud was "the greater risk to SNAP"). It has repeatedly discussed future actions against Minnesota for not complying with the Recertification Letter. *Id.* at 24, 26, 28–29, 30, 39; July 28, 2026 Tr. at 5:6–9, 26:12–25. At the motion to dismiss hearing, USDA's counsel declined to disavow intentions of enforcing its letters if the case were dismissed as moot. July 28, 2026 Tr. at 24:15–25:5, 25:24–27:4.

## LEGAL STANDARD

"A court with jurisdiction has a 'virtually unflagging obligation' to hear and resolve questions properly before it." *FBI v. Fikre*, 601 U.S. 234, 240 (2024). But "[s]ometimes, events in the world overtake those in the courtroom,[3] and a complaining party manages to

[2] This includes action on the Awards Termination Letter, which USDA understood to have been enjoined by the injunction. July 28, 2026 Tr. at 22:5–24:4.
[3] A classic mootness scenario is caused by "[t]he passage of time [or] acts of third parties," which are not at issue here. *Arc of Iowa v. Reynolds*, 33 F.4th 1042, 1044 (8th Cir. 2022). For example, a suit challenging interference with fish spawning was mooted by the end of spawning season. *South Dakota v. Hazen*, 914 F.2d 147, 150 (8th Cir. 1990). A challenge

secure outside of litigation all the relief he might have won in it. When that happens, a federal court must dismiss the case as moot." *Id.* (citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

As the defendant, "the Government…bears the burden to establish that a once-live case has become moot." *West Virginia v. EPA*, 597 U.S. 697, 719 (2022). A case is moot "'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016) (quoting *Knox v. Service Emps.*, 567 U.S. 298, 307 (2012)). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).

A defendant may not "'automatically moot a case' by the simple expedient of suspending its challenged conduct after it is sued." *Fikre*, 601 U.S. at 241 (quoting *Already*, 568 U.S. at 91). "A defendant's 'voluntary cessation of a challenged practice' will moot a case only if the defendant can show that the practice cannot 'reasonably be expected to recur.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). This is a "formidable burden." *Id.* "Were the rule more forgiving, a defendant might suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off; it might even repeat 'this cycle' as necessary until it achieves all of its allegedly 'unlawful ends.'" *Id.* (quoting *Already*, 568 U.S. at 91). "A live case or controversy cannot be so easily disguised, and a federal court's constitutional authority

to a state's use of a particular lethal injection drug was mooted when the drug's manufacturer ceased its production. *Ringo v. Lombardi*, 677 F.3d 793, 797 (8th Cir. 2012).

cannot be so readily manipulated. To show that a case is truly moot, a defendant must prove 'no reasonable expectation remains that it will return to [its] old ways.'" *Id.* (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33 (1953)). "That much holds for governmental defendants no less than for private ones." *Id.*

Mootness differs from standing in important ways. "Unlike with standing," the defendant "bears the burden to establish that a once-live case has become moot." *Iowa v. Wright*, 154 F.4th 918, 940 (8th Cir. 2025). And "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Laidlaw*, 528 U.S. at 190; *see also Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 604 (8th Cir. 2022) ("[T]he burden of proving mootness is higher than simply showing a lack of standing.").

## ARGUMENT

**This case is not moot.**

### 1. It is not impossible for the Court to grant relief.

"A case becomes moot…'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Campbell-Ewald*, 577 U.S. at 161 (quoting *Knox*, 567 U.S. at 307). If this case were dismissed and the preliminary injunction dissolved, USDA might do any of the following:

1. Terminate "Minnesota's continued participation in SNAP" for "[f]ailure to participate" in the recertification pilot project. Compl. Ex. 1.

2. Claw back Minnesota's SNAP administrative funding for the first quarter of 2026, which USDA withheld in the Enforcement Letter. *Id.* Ex. 3.

3. Withhold Minnesota's SNAP administrative funding for later quarters without following "the congressionally mandated two-step process of Section 2020(g)" under the guise of a "Section 2026 'pilot project.'" PI Order at 31.

4. "Initiate noncompliance proceedings" against Minnesota under 7 U.S.C. § 2020(g) for not complying with the Recertification Letter.

5. Retaliate against Minnesota in other ways for not complying with the Recertification Letter, as USDA did with the Awards Termination Letter.

6. Suspend "payments on all active awards and any future awards from USDA to the State of Minnesota[.]" Am. Compl. Ex. 2.

7. Require "payment justifications for all federal dollar expenditures from January 20, 2025, to the present" and "[g]oing forward" on "all transactions on awards to the State of Minnesota[.]" Am. Compl. Ex. 2.

The permanent injunction and vacatur that Minnesota seeks would prohibit all of the above. Minnesota need not prove USDA *will* take these actions: the burden of establishing mootness is on USDA, and there is no mootness so long as it is *possible* for the court to grant relief. *Campbell-Ewald*, 577 U.S. at 161; *see also Iowa v. Wright*, 154 F.4th 918, 941 (8th Cir. 2025) ("It is not enough that the practical impact of any decision is not assured.").

**2. USDA's inaction does not moot this case.**

At the motion to dismiss hearing, the Court asked whether USDA has followed through on its letters. July 28, 2026 Tr. 19:23–21:11, 47:2–6. It also asked whether USDA has made "active threats" to enforce its letters or intends to do so. *Id.* 21:22–22:4, 24: 18–25:18, 56:22-57:10. The Court stated "Minnesota wants USDA to just comply with the law" and that the Court believed USDA was representing that is what it would do. *Id.*

28:17–22. To be clear, there are active threats,[4] and, respectfully, USDA has not represented that it would follow the law.[5] But regardless, USDA's inaction since the entry of the preliminary injunction does not moot this case.

USDA's inaction is entirely a result of the injunction. By enjoining "any adverse action against Minnesota based on the Recertification Letter," the injunction prohibited USDA from withholding not only the administrative funds for the first quarter of 2026 but all subsequent quarters. PI Order at 50. It also prohibited USDA from initiating enforcement proceedings under 7 U.S.C. § 2020(g). And USDA understood the order to enjoin the Awards Termination Letter. July 28, 2026 Tr. at 22:5–24:4. Compliance with a preliminary injunction obviously does not moot a case. *See Honig v. Doe*, 484 U.S. 305, 320 (1988) (no mootness where plaintiff would have been harmed "were it not for the…injunctive relief issued below"); *see also Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020) ("We will understandably be skeptical of a claim of mootness when a defendant yields in the face of a court order and assures us that the case is moot because the injury will not recur, yet maintains that its conduct was lawful all along").

[4] USDA has repeatedly referred to future "enforcement proceedings" to withhold administrative funds. ECF 67 at 26, 29, 39; July 28, 2026 Tr. at 5:6–9, 26:12–25. USDA's counsel refused the Court's invitation to disavow any intention of acting on the letters. July 28, 2026 Tr. at 24:15–25:5, 25:24–27:4. The Eighth Circuit has explained that the government's assertion it has not decided whether to take enforcement actions "is actually a concession that it may do so." *Religious Sisters*, 55 F.4th at 605 (cleaned up) (finding standing despite agency's indecision on whether to take enforcement action).

[5] USDA steadfastly defends the legality of its letters. ECF 22, 23, 36, 63, 67, 81; July 28, 2026 Tr. at 5:17–19, 28:23–24, 66:25–67:1, 68:9–12.

This case would not be moot even if USDA had voluntarily refrained from enforcing its letters, rescinded them, or renounced its intentions. *See Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 795 (8th Cir. 2016) (lack of enforcement did not moot case where "inaction is not permanent" and agency "can at any time implement its policy"). "A defendant's 'voluntary cessation of a challenged practice' will moot a case only if the defendant can show that the practice cannot 'reasonably be expected to recur.'" *Fikre*, 601 U.S. at 241 (quoting *Laidlaw*, 528 U.S. at 189). This is a "formidable burden." *Id.*

Courts have refused to dismiss cases where the government has done far more to distance itself from prior positions than USDA has done (nothing):

- In *Fikre*, the plaintiff challenged his inclusion on the "No-Fly List." The government removed him and represented he would not be relisted. 601 U.S. at 239–40. The case dragged on for another eight years without the plaintiff being relisted. But still the Supreme Court held the case was not moot because the government had not met the "formidable standard" of showing "it cannot reasonably be expected to resume its challenged conduct." *Id.* at 243 (emphasis removed).

- In *West Virginia*, petitioners challenged the EPA's Clean Power Plan. The EPA represented it had "no intention of enforcing the Clean Power Plan" and would promulgate a replacement rule. 597 U.S. at 720. But that too was insufficient to meet the "heavy" burden of establishing mootness. *Id.* at 719–20; *see also Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 583 U.S. 109, 120 n.5 (2018) (challenge to rule not mooted by formal proposal to rescind rule).

- In *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982), a city repealed the challenged portion of an ordinance after being sued. The Supreme Court held that did not moot the case because "the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision[.]" 455 U.S. at 289.

USDA has done nothing to voluntarily cease its challenged conduct. But even if it had, "[a] live case or controversy cannot be so easily disguised, and a federal court's constitutional authority cannot be so readily manipulated." *Fikre*, 601 U.S. at 241.

Courts are particularly unlikely to find mootness where a defendant "vigorously defends" the legality of its actions. *West Virginia*, 597 U.S. at 720; *see also Honig*, 484 U.S. at 321–22; *Road-Con, Inc. v. City of Phila.*, 120 F.4th 346, 357 (3d Cir. 2024) ("voluntary cessation…while still maintaining 'that its conduct was lawful all along' is insufficient"); *Hartnett*, 963 F.3d at 306 ("We will understandably be skeptical of a claim of mootness when a defendant…assures us that the case is moot because the injury will not recur, yet maintains that its conduct was lawful all along."). Here the USDA stridently defends the legality of its actions, making dismissal for mootness inappropriate. *See, e.g.,* July 28, 2026 Tr. 5:17–19, 28:23–24, 66:25–67:1, 68:9–12.

**3. Minnesota's ability to challenge future USDA actions does not moot this case.**

The Court noted that if this case were dismissed as moot and USDA resumes its conduct, Minnesota could sue again. July 28, 2026 Tr. 49:5–10. But that is exactly what the voluntary cessation doctrine seeks to avoid. *See Fikre*, 601 U.S. at 241 ("Were the rule more forgiving, a defendant might suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off; it might even repeat 'this cycle' as necessary until it achieves all of its allegedly 'unlawful ends.'").

USDA has also argued there is an administrative process for Minnesota to challenge any future enforcement. ECF 67 at 26, 28–29, 30, 39; July 28, 2026 Tr. 5:6–9, 26:12–25.

That process is limited: it permits challenges only to disallowances of SNAP administrative funds made after USDA follows the procedures in 7 U.S.C. § 2020(g). *See* ECF 71 at 17–19. USDA's letters threaten actions not reviewable under that process, including terminating Minnesota's participation in SNAP or withholding grant funding. And at issue in this case is USDA's claim that it can withhold administrative funds without following Section 2020(g) "so long as it cloaks its action as a Section 2026 'pilot project.'" PI Order at 31. USDA's claim it will abide by Section 2020(g) in the future is just voluntary cessation, which cannot moot a case.

Regardless: an administrative procedure for challenging future enforcement does not moot this case. Parties need not await enforcement proceedings before challenging agency actions; if those procedures are no barrier to suing, certainly they do not moot a case. *See U.S. Army Corps. of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 600 (2016); *Sackett v. EPA*, 566 U.S. 120, 260 (2012). Courts have rejected USDA's arguments that states must proceed through the same procedures it cites here before suing. *Colorado v. Trump*, 823 F. Supp. 3d 1251, 1279 (D. Colo. 2026) ("the Court perceives no reason to compel Colorado to submit to this process"); *California v. USDA*, 2025 WL 2939227, at *5–6 (N.D. Cal. Oct. 15, 2025).

**4. Passage of the Recertification Letter's deadline does not moot this case.**

The Court also asked why this case remains live when the deadline USDA set for Minnesota to recertify SNAP recipients has come and gone. July 28, 2026 Tr. 34:3–6, 48:8–14. But Minnesota is in no different position than it was when the Court issued its preliminary injunction order on January 16, after that deadline. The court stated:

> [T]he Recertification Letter left Minnesota with two paths: comply with its demand or face the consequences…[N]ow that Minnesota has *not* complied, the Recertification Letter's threat of consequences has arrived.

PI Order at 42–43.

The same is true today. If the case were dismissed, USDA could impose its threatened consequences, including withholding SNAP administrative or beneficiary funding. The Court found that "USDA's threat to terminate all administrative and beneficiary SNAP funding to Minnesota risks…irreparable harm." PI Order at 45.

## CONCLUSION

USDA cannot meet its burden of showing Minnesota could obtain no relief whatsoever. Were this Court to dismiss this case, Minnesota would immediately be subject to the harms the Court temporarily averted with its preliminary injunction. Minnesota must now obtain permanent relief. Even if USDA were to walk back its actions—which it has not done—the doctrine of voluntary cessation prevents it from mooting this case. This case is not moot, and Defendants' pending motion to dismiss should be denied.

Dated: August 25, 2026

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

**s/ Joseph Richie**
JOSEPH RICHIE
Special Counsel
Atty. Reg. No. 0400615

PETER J. FARRELL
Acting Solicitor General
Atty. Reg. No. 0393071

KATHERINE BIES
Special Counsel
Atty. Reg. No. 0401675

BRIAN CARTER
Special Counsel
Atty. Reg. No. 0390613

LINDSEY MIDDLECAMP
Special Counsel
Atty. Reg. No. 0392589

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2125
(651) 300-0921 (Voice)
(651) 282-5832 (Fax)
joseph.richie@ag.state.mn.us
peter.farrell@ag.state.mn.us
katherine.bies@ag.state.mn.us
brian.carter@ag.state.mn.us
lindsey.middlecamp@ag.state.mn.us

*Attorneys For Plaintiff State of Minnesota*

|#6373596-v1